UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENDRICK SCOTT,

    Petitioner,

                                                   Case No: 03-73737
                                                   HON. AVERN COHN

v.

DAVID JAROG,

    Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

**I. Introduction**

This is a habeas case under 28 U.S.C. §2254. Kendrick Scott ("Petitioner"), filed a pro se petition for writ of habeas corpus claiming that he is incarcerated in violation of his constitutional rights, raising seven claims detailed below. Respondent argues that Petitioner's claims lack merit. The Court agrees. For the reasons that follow, the petition will be denied.

**II. Statement of Facts**

The material facts as gleaned from the record follow.

Petitioner's conviction arises out of the May 9, 1999 shooting death of Lisa Kindred while parked outside of a residence in a mini-van, with her three children in the vehicle. The Kindred family, including William Kindred, Lisa Kindred's husband, left a drive-in movie theater shortly after midnight and went to visit William Kindred's sister and her fiancé. William Kindred went into the house while Lisa Kindred and the children remained in the mini-van. While in the home, William Kindred heard a loud bang, after which he came out

of the house and saw his mini-van speeding away.  At the same time, he noticed a man running away.  The mini-van made it to the corner gas station, at which time William Kindred discovered that his wife had been shot in the chest.  An ambulance arrived to transport her to the hospital where she subsequently died.  The investigation led to the arrest of the Petitioner.

### III.  Procedural History

On June 1, 2000, Petitioner was convicted in a jury trial of first degree felony murder, assault with intent to rob while armed, and possession of a firearm during the commission of a felony.  On June 21, 2000, Petitioner was sentenced to concurrent terms of life imprisonment for the first degree murder conviction and twenty to thirty years' imprisonment for the assault with intent to rob while armed conviction, consecutive to a mandatory two year imprisonment for the felony firearm conviction.  Petitioner filed a direct appeal initially raising three issues and then supplementing the appeal with an additional five issues, as follows: (1)  whether the trial court erred in admitting a statement from a non-testifying co-defendant; (2) whether there was sufficient evidence to support Petitioner's conviction; (3) whether double jeopardy is applicable; (4) whether Petitioner's due process rights and the right to a fair trial were violated when the prosecutor engaged in misconduct by using false testimony elicited from a witness; (5) whether the alleged prosecutorial misconduct deprived Petitioner of a fair trial; (6) whether Petitioner was denied effective assistance of counsel; (7) whether the trial court erred in allowing a co-defendant's incriminating hearsay statement into evidence; and (8) whether a new trial is required due to the  trial court's failure to acknowledge on the record Petitioner's waiver of his right to testify on his own

behalf.  The Michigan Court of Appeals affirmed Petitioner's conviction for felony murder and vacated his assault with intent to rob conviction.  People v. Scott, 2002 WL 483420 Mich. Ct. App. No. 228548 (per curiam) (March 26, 2002).  The Michigan Supreme Court denied leave to appeal.  People v. Scott, 467 Mich. 911; 654 N.W.2d 334 (Table) Mich. Sup. Ct. No. 121585 (December 4, 2002).

On September 12, 2003, Petitioner filed the instant petition, raising the following claims: (1) whether the trial court erred in admitting a statement from a non-testifying co-defendant; (2) whether there was sufficient evidence to support Petitioner's conviction; (3) whether Petitioner's due process rights and the right to a fair trial were violated when the prosecutor engaged in misconduct by using false testimony elicited from a witness; (4) whether the alleged prosecutorial misconduct deprived Petitioner of a fair trial; (5) whether Petitioner was denied effective assistance of counsel; (6) whether Petitioner was denied a fair trial and his right to confrontation when the trial court allowed a co-defendant's incriminating hearsay statement into evidence; and (7) whether a new trial is required due to the trial court's failure to acknowledge on the record Petitioner's waiver of his right to testify on his own behalf.

## IV.  STANDARD OF REVIEW

Under 28 U.S.C. §2254(d), a petitioner is not entitled to relief in a federal habeas corpus proceeding unless the state court's adjudication of his or her due process claim resulted in a decision that: (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (2) was based on an unreasonable determination of the facts in light of the evidence presented

in the state court proceeding.

"Clearly established federal law" means "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000). A state court decision is "contrary to" federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 412-13.

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. Furthermore, a federal court may not issue a writ of habeas corpus under the "unreasonable application" clause of 28 U.S.C. §2254(d) "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 365; see also, Prince v. Vincent, 538 U.S. 634, 638-39 (2003). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was *objectively* unreasonable," as opposed to transforming the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was reasonable. Williams, 529 U.S. at 411.

Therefore, the threshold inquiry in this case is whether the Petitioner seeks to apply a rule(s) of law that was clearly established at the time of his conviction in the state court.

4

See Id. at 412.

## V. ANALYSIS

### A. Claim 1 - Admission of Justly Johnson's Statement

Petitioner's first habeas claim is that the trial court erred when it allowed into evidence a statement made by Petitioner's co-defendant, Justly Johnson, who did not testify at Petitioner's trial.[1] During trial, Raymond Jackson testified for the prosecution that on May 9, 1999, Johnson told him that he "hit a lick" - robbed someone - with defendant. The Trial court held the statement admissible under Mich. R. Evid. 804(b). The Michigan Court of Appeals held that trial court erred because it failed to establish that Johnson was unavailable to testify, however, the error did not affect Petitioner's rights because another witness, Antonio Burnette, testified as to a similar statement. On habeas review, Petitioner asserts that the statement is hearsay and should have been ruled inadmissible by the trial court.

It is well-established that "federal habeas corpus relief does not lie for errors of state law." Estelle v. McGuire, 502 U.S. 62, 67 (1991) (quoting Louis v. Jeffers, 497 U.S. 764, 780 (1990)). Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they "offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." Montana v. Egelhoff, 518 U.S. 37, 43 (1996) (quoting Patterson v. New York, 432 U.S. 197, 202 (1977)); see also Seymour v. Walker, 224 F.3d 542, 552 (6th Cir.2000). "Errors by a state court in the

---

[1] Petitioner also argues that the admission of Johnson's statement implicates his right to confrontation, which is discussed separately below.

admission of evidence are not cognizable in habeas corpus proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." Kelly v. Withrow, 25 F.3d 363, 370 (6th Cir.1994) (quoted in Biros v. Bagley, 422 F.3d 379, 391 (6th Cir.2005)).

Assuming the admission of the statement was erroneous under Michigan law, Petitioner was not deprived of a fair trial in light because, as the Michigan Court of Appeals explained, Burnette testified as to a similar statement made by the Petitioner. Therefore, the jury would have heard the same type of evidence despite the admission of Johnson's statement. The Michigan Court of Appeals' conclusion was not contrary to or an unreasonable application of federal law. Petitioner is not entitled to relief on this ground.

### B. Claim 2 - Insufficiency of the Evidence

Petitioner's second habeas claim is that there was insufficient evidence at trial to sustain a conviction in his case. In reviewing a sufficiency of the evidence claim, a federal habeas court must defer to the trier of fact with respect to issues of conflicting testimony, weight of the evidence and the credibility of the witnesses. Jackson v. Virginia, 443 U.S. 307, 319 (1979).

The Michigan Court of Appeals rejected Petitioner's insufficiency of the evidence claim as follows:

> There was evidence presented in this case that defendant told Burnette that he an codefendant Johnson were going to "hit a lick." According to Burnette, defendant later informed him that defendant and codefendant Johnson had to shoot a lady because "she wouldn't come out the money." Viewed in a light most favorable to the prosecution, this evidence was sufficient to enable a rational trier of fact to find beyond a reasonable doubt that defendant possessed the requisite intent to rob someone while armed.

The court of appeals' decision did not result in an objectively unreasonable application of Jackson. To the contrary, the Michigan Court of Appeals applied the correct legal standard to the facts of Petitioner's case as revealed at trial. Moreover, Petitioner has come forward with no evidence to rebut the presumption that the factual findings of the Michigan appellate courts on this issue is incorrect. As such, Petitioner is not entitled to habeas relief on this claim.

### C. Claims 3 and 4 - Prosecutorial Misconduct

Petitioner's third and fourth habeas claims are based upon his contention that the prosecutor engaged in misconduct which deprived him of a fair trial. The specific alleged acts of prosecutorial misconduct are as follows: (1) the prosecutor presented false testimony from Antonio Burnette; (2) the prosecutor elicited evidence that Antonio Burnette had been threatened; (3) the prosecutor argued facts not in evidence; (4) the prosecutor misstated the evidence during her closing argument; and (5) the prosecutor misrepresented Antonio Burnette's testimony.

"On habeas corpus review, the standard to be applied to an allegation of prosecutorial misconduct is whether the petitioner was deprived of a fundamentally fair trial." Stumbo v. Seabold, 704 F.2d 910, 911 (6th Cir. 1983)(citing Cook v. Bordenkircher, 602 F.2d 117 (6th Cir. 1979)). Habeas relief will not be granted based on prosecutorial misconduct unless the prosecutor's statement likely had a bearing on the outcome of the trial in light of the strength of the competent proof of guilt. Byrd v. Collins, 209 F.3d 486, 529 (6th Cir. 2000). For relief to be granted, the misconduct must have " 'so infected the

trial with unfairness as to make the resulting conviction a denial of due process." ' Darden v.. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)).

Therefore, on habeas review, the standard of review is limited to " 'the narrow one of due process." ' Darden, 477 U.S. at 181. In making this determination, the reviewing court must bear in mind that " 'the touchstone of due process analysis ... is the fairness of the trial, not the culpability of the prosecutor." ' Serra v. Michigan Dep't of Corrections, 4 F.3d 1348, 1355 (6th Cir. 1993) (quoting Smith v. Phillips, 455 U.S. 209, 219 (1982)). Therefore, even if the prosecutor's conduct was "undesirable or even universally condemned," it does not constitute a due process violation unless "the conduct was 'so egregious so as to render the entire trial fundamentally unfair." ' Darden, 477 U.S. at 181; Serra, 4 F.3d at 1355.

The deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice. Giglio v. United States, 405 U.S. 150, 153 (1972). There is also a denial of due process when the prosecutor allows false evidence or testimony to go uncorrected. Napue v. Illinois, 360 U.S. 264, 269 (1959). To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew they were false. See Mahaday v. Cason, 367 F. Supp. 2d 1107, 1114 (E.D. Mich. 2005). Mere inconsistencies in testimony do not establish the knowing use of false testimony by the prosecutor. Coe v. Bell, 161 F.3d 320, 343 (6th Cir.1998). The fact that

a witness contradicts himself or changes his story also does not establish perjury. Monroe v. Smith, 197 F. Supp. 2d 753, 762 (E.D. Mich. 2001).

Here, the Michigan Court of Appeals found that this claim lacked merit because Petitioner failed to show any outcome determinative plain error in connection with his claims that the prosecutor misconstrued facts and argued facts not in evidence. As to the allegation that the prosecution suborned perjury, the Michigan Court of Appeals stated:

> After a careful review of the record, we find nothing to support a conclusion that the prosecution knowingly presented false or perjured testimony. Indeed, the record doe not reveal that the prosecutor solicited or permitted Burnette to change his testimony. The fact that the prosecution failed to present Burnette with the same questions he was asked at Johnson's trial does not constitute proof that eh prosecutor knew Burnette's testimony was false. Moreover, evidence that defendant was taken into police custody for questioning does not necessarily refute Burnette's testimony regarding a conversation he had with defendant or prove that the prosecution was aware that Burnette's testimony was false. There is no evidence that he prosecution attempted to conceal any conflicts and defendant was afforded ample opportunity to impeach Burnette's testimony at trial.

People v. Scott, 2002 WL 483420 at * 3. The Court agrees. The record does not support the contention that Antonio Burnette's trial testimony was false or that the prosecution knew it was false. Accordingly, court of appeals' conclusion was not contrary to Supreme Court decisions on the use of perjured testimony.

Petitioner's allegation of prosecutorial misconduct based on the prosecutor's elicitation of testimony from Burnette that he had been threatened also fails. As the Michigan Court of Appeals recognized, such evidence of a defendant's threat against a witness is generally admissible. See People v. Kelly, 231 Mich. App. 627 (1998). Thus, it was not improper for the prosecution to explore evidence which is admissible. It is also noted that the trial court gave the prosecution an opportunity to link any threats against

9

Burnette to Petitioner and when the prosecution failed to do so, the trial court properly sustained defense counsel's objection to the questioning. The Michigan Court of Appeals' similar conclusion was not unreasonable.

As to Petitioner's allegations that the prosecutor argued facts not in evidence and misstated the evidence in closing argument, the Michigan Court of Appeals found that these aspects of Petitioner's prosecutorial misconduct claim could only be reviewed for plain error because trial counsel did not object and that no plain error existed. The Court agrees. This is particularly so because the trial court instructed the jury that attorneys' statements were not evidence. As such, Petitioner's prosecutorial misconduct claim lacks merit and the state courts' analysis relative to this issue constituted a reasonable application of controlling federal constitutional law. Therefore, Petitioner is not entitled to habeas relief on this claim.

### D.  Claim 5 - Ineffective Assistance of Counsel

Petitioner's next habeas claim is that he was denied ineffective assistance of counsel. Specifically, he maintains that: (1) trial counsel failed to investigate the prosecution's witness, Burnette, and further failed to effectively discredit his testimony; (2) trial counsel failed to object during the prosecutor's closing argument despite the fact that it was an improper presentation to the jury; (3) trial counsel elicited prejudicial evidence about co-defendant Johnson's, conviction; and (4) trial counsel failed to inform the Petitioner of his right to testify on his own behalf.

To prevail on his ineffective assistance of counsel claims, the Petitioner must show that the state court's conclusion regarding these claims was contrary to, or an

unreasonable application of Strickland v. Washington, 466 U.S. 668 (1984). See Cathron v. Jones, 190 F. Supp. 2d 990, 996 (E.D. Mich. 2002). Strickland established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. Strickland, 466 U.S. at 687. The Strickland standard applies as well to claims of ineffective assistance of appellate counsel. See Whiting v. Burt, 395 F.3d 602, 617 (6th Cir. 2005).

First, Petitioner alleges that his attorney failed to investigate Burnette by checking police records and obtaining a transcript of Johnson's trial where Burnette also testified. Petitioner says that this failure to investigate led to trial counsel's inability to properly impeach Burnette's testimony because the attorney was lacking knowledge he would have learned from conducting a proper investigation.

The failure of trial counsel to develop every bit of testimony through all available inconsistent statements to impeach witnesses is not ineffective assistance of counsel where the omissions were not sufficient to demonstrate unprofessional or improper assistance of counsel and where petitioner was not prejudiced as a result of the alleged errors. See Poyner v. State of Iowa, 990 F.2d 435, 438 (8th Cir. 1993). Here, trial counsel did attempt to impeach Burnette's credibility with the fact that Burnette was intoxicated and under the influence of narcotics during Petitioner's alleged confession regarding his (Petitioner's) involvement in the shooting death of Lisa Kindred. Burnette was also questioned about his involvement in the case as being one of the original suspects in Lisa Kindred's murder. As such, Petitioner has failed to show that counsel's performance was

deficient. Moreover, it is not reasonably probable that the result of the proceeding would have been different had counsel introduced evidence discovered through unknown police reports or from a transcript from another proceeding, and it certainly cannot be said that the state court's rejection of this claim amounts to an unreasonable application of Strickland. Accordingly, the Court concludes that Petitioner is not entitled to habeas relief on this allegation of ineffective assistance.

Second, Petitioner claims that trial counsel failed to make objections during the prosecutor's closing argument. During closing arguments, Petitioner asserts that the prosecutor was arguing facts not in evidence and misstated facts about guns and ammunition that were unrelated to the shooting of Lisa Kindred. Because this Court has already concluded that the record, nor Petitioner's pleadings support prosecutorial misconduct, which includes her actions during closing arguments, the Court does not find that trial counsel's failure to place objections on the record during the prosecutor's closing argument constitutes deficient legal representation. Accordingly, Petitioner's allegation that counsel rendered ineffective assistance of counsel by failing to object to the prosecutor's remarks must be rejected.

Petitioner also asserts that he was denied effective assistance of counsel because trial counsel elicited testimony from Raymond Jackson that Johnson had been convicted for murdering Lisa Kindred and that Johnson was incarcerated. Decisions that "might be considered sound trial strategy" do not constitute the ineffective assistance of counsel. Michel v. Louisiana, 350 U.S. 91, 101 (1955). Trial counsel's tactical decisions are not completely immune from Sixth Amendment review, but they must be particularly egregious

12

before they will provide a basis for relief. Martin v. Rose, 744 F.2d 1245, 1249 (6th Cir. 1984). Trial counsel's decision to elicit certain testimony from Raymond Jackson is presumed to be a matter of trial strategy. Petitioner has not demonstrated how trial counsel's decision in this matter fell below professional standards.

Finally, Petitioner alleges that trial counsel failed to inform him of his right to testify on his own behalf. Defendants in criminal cases possess a constitutional right to testify in their own behalf. Rock v. Arkansas, 483 U.S. 44, 49 (1987). This right is personal to the defendant and may be relinquished only by the defendant. United States v. Joelson, 7 F.3d 174, 177 (6th Cir. 1993). Relinquishment of the right must be knowing and intentional. Id. Defense counsel's role is to advise the defendant whether to take the stand, but the ultimate decision is for the defendant to make. United States v. Hover, 293 F.3d 930, 933 (6th Cir. 2002).

"[W]hen a tactical decision is made not to have the defendant testify, the defendant's assent is presumed. This is so because the defendant's attorney is presumed to follow the professional rules of conduct and is 'strongly presumed to have rendered adequate assistance' in carrying out the general duty 'to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution.'" United States v. Webber, 208 F.3d 545, 551 (6th Cir. 2000) (quoting Strickland, 466 U.S. at 688-90) (footnote in original)

Here, the record does not indicate that trial counsel improperly interfered with Petitioner's right to testify and Petitioner has not presented any evidence stating otherwise.

13

Moreover, Petitioner maintains that the trial court erred by not putting on the record the fact that Petitioner did not testify. Michigan case law, however, provides that the trial court has no such duty. People v. Stewart, 219 Mich. App. 38, 42; 555 NW2d 715 (1996).

Overall, Petitioner has failed to show that trial counsel was ineffective.

### E. Claim 6 - Right to Confrontation

Petitioner's sixth habeas claim is based upon his assertion that he was denied his rights under the Confrontation Clause because he had no opportunity to cross-examine Johnson about the statement he made to Raymond Jackson about his (Petitioner's) involvement with Lisa Kindred's murder. Whether the Court grants habeas relief on this issue depends upon whether Justly Johnson's statement is categorized as testimonial or non-testimonial. The Court of Appeals for the Sixth Circuit very recently ruled upon a case that is on point with the matter presently before the Court. Jackson v. Renico, 179 Fed. Appx. 249 (6th Cir. 2006).

In Jackson, the defendant and co-defendant were charged with first degree felony murder and armed robbery. The defendants were tried jointly, but had separate juries. The co-defendant told a mutual friend of both defendants about the murder and robbery the defendants committed. The statement implicated both defendants in the crime. The trial court held and the Michigan Court of Appeals agreed that the hearsay statement was properly admitted as a statement against interest pursuant MRE 804(b)(3). Id. at 253. The Sixth Circuit noted the following characteristics about the co-defendant's statement which supported its admissibility: (1) the statement was voluntarily given; (2) the statement was made to a friend; (3) the statement was uttered spontaneously at the initiation of the co-

defendant (declarant) without prompting or inquiry by the mutual friend; (4) the statement was made in the context of a narrative of events; (5) the statement was made three days after the killing; and (6) the statement implicated both the defendant and co-defendant in the commission of the crimes.  Id.  As the Sixth Circuit explained:

> Further, the fact that the co-defendant's statement identified defendant as the shooter does not compel exclusion of the statement.  As noted by the trial court, the co-defendant's statement implicated himself as an aider and abettor during the commission of the crime. This is not a situation where the co-defendant's statement shifted all blame to the defendant.

Id.

This is precisely the factual situation presently before the Court.  The co-defendant (Johnson) made a statement to Raymond Jackson, a mutual friend of the co-defendant and the Petitioner, about the shooting and robbery of Lisa Kindred.  The record shows that Johnson initiated the conversation voluntarily and implicated himself as the actual shooter in the crime.  Accordingly, as in Jackson, the Court does not find the admissibility of Mr. Johnson's statement to have been a unreasonable application of clearly established federal law.  Despite this finding, Petitioner argues that the admission of Mr. Johnson's statement violates his right of confrontation.

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to physically confront and cross-examine adverse witnesses at all stages of the trial.  Illinois v. Allen, 397 U.S. 337, 388 (1970). In Crawford v. Washington, 541 U.S. 36 (2004), the United States Supreme Court held that testimonial statements of a witness who does not appear at trial are inadmissible unless the witness was unavailable to testify and the defense had a prior opportunity for cross-examination.  Where testimonial

evidence is at issue ... the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination. Id. at 54.

The Crawford court declined to spell out a comprehensive definition of the term "testimonial," but stated that, at a minimum, the term includes prior testimony at a preliminary hearing, before a grand jury, or at a former trial, and police interrogations. Id. A casual remark to an acquaintance, business records, and statements made in furtherance of a conspiracy do not constitute testimonial statements subject to the strictures of the Sixth Amendment. Id. at 51-52, 56. [T]he proper inquiry in deciding whether a statement is testimonial for evidentiary purposes is "whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime." United States v. Cromer, 389 F.3d 662, 675 (6th Cir. 2005); United States v. Pugh, 405 F.3d 390, 399 (6th Cir. 2005).

Prior to Crawford, the admissibility of any statement--whether testimonial or not--depended on whether the out-of-court statement offered for the truth of the matter asserted, represented an adequate indicia of reliability, and whether the statement fell within a "firmly rooted hearsay exception," or otherwise bore "particularized guarantees of trustworthiness." Ohio v. Roberts, 448 U.S. 56, 100 (1980). Thus, "[a]ny out-of-court statement was constitutionally admissible so long as it fell within an exception to the hearsay rule or, if that exception was not firmly rooted, the court found that the statement was likely to be reliable." United States v. Saget, 377 F.3d 223, 226 (2nd Cir. 2004). Consequently, with respect to non-testimonial hearsay statements.

Roberts and its progeny remain the controlling precedents. According to United

States v. Gibson, 409 F.3d 325 (6th Cir. 2005), "Crawford dealt only with testimonial statements and did not disturb the rule that nontestimonial statements are constitutionally admissible if they bear independent guarantees of trustworthiness." 409 F.3d at 338; see also Saget, 377 F.3d at 227 ("Crawford leaves the Roberts approach untouched with respect to nontestimonial statements.... Accordingly, while the continued viability of Roberts with respect to testimonial statements is in doubt, we will assume for purposes of this opinion that its reliability analysis continues to apply to control nontestimonial hearsay...."). United States v. Franklin, 415 F.3d 537, 546 (6th Cir. 2005).

Based upon the foregoing, Johnson's statement to Raymond Jackson was a non-testimonial statement which is not subject to the parameters of Crawford, but rather to those set forth in Roberts. Since Johnson's statement was: (1) self-inculpatory; (2) made to a friend; and (3) voluntary, it bore sufficient indicia of reliability and particular guarantees of trustworthiness under Roberts. Accordingly, its admission into evidence was a reasonable application of clearly established federal law and did not violate Petitioner's Confrontation Clause rights. As such, Petitioner is not entitled to habeas relief on this ground.

## F. Claim 7 - Right to Testify

Petitioner's final claim that he was denied his right to testify was addressed above in the discussion of Petitioner's ineffective assistance of counsel claim. As previously indicated, the record does not indicate that Petitioner's attorney improperly interfered with Petitioner's right to testify and Petitioner has not presented any evidence indicating otherwise. Thus, he is not entitled to habeas relief on this ground.

## VI.  CONCLUSION

For the reasons stated above, Petitioner's claims lack merit.  Accordingly, the petition is DENIED.  This case is DISMISSED.

SO ORDERED.

                                      s/Avern Cohn
                                      AVERN COHN
                                      UNITED STATES DISTRICT JUDGE

Dated:  September 28, 2006

I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, September 28, 2006, by electronic and/or ordinary mail.

                                      s/Julie Owens
                                      Case Manager, (313) 234-5160